THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : 3:16-CR-227 |
| | : (JUDGE MARIANI) |
| BRIAN REYES, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On August 9, 2016, an Information was filed charging Defendant Brian Reyes with Conspiracy to Defraud the Government with Respect to Tax Claims, in violation of 18 U.S.C. § 286 (Doc. 1). In October of 2016, Defendant pleaded guilty to the Information. Defendant was thereafter sentenced by District Court Judge Richard P Conaboy[1] on November 3, 2017 to a term of 70 months imprisonment to be followed by three years of supervised release. (*See* Doc. 65). Defendant was further ordered to pay restitution in the amount of $3,606,435.45 to the Internal Revenue Service (*id.* at 6).

Presently before the Court is Defendant Reyes' Motion for Early Termination of Supervised Release (Doc. 94), filed approximately 18 months into his 36-month term of

---

[1] This action was re-assigned to the undersigned on May 20, 2020, following the death of Judge Conaboy.

supervised release. The parties have fully briefed the motion (see Docs. 95, 98) and it is thus ripe for disposition. For the reasons that follow, Defendant's motion will be denied.

## II. ANALYSIS

"[T]he primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than to punish them." *United States v. Murray*, 692 F.3d 273, 280 (3d Cir. 2012) (quoting *United States v. Albertson*, 645 F.3d 191, 197 (3d Cir. 2012)). Congress has thus provided the sentencing court with the authority to terminate a defendant's term of supervised release early. *See Burkey v. Marberry*, 556 F.3d 142, 146 n.3 (3d Cir. 2009) ("Pursuant to 18 U.S.C. § 3583(e), only the sentencing court has the authority to modify [a defendant's] term of supervised release"). Pursuant to 18 U.S.C. § 3583, "[t]he court may, after considering the factors set forth in [18 U.S.C. §] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). "'The expansive phrases "conduct of the defendant" and "interest of justice" make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination.'" *United States v. Melvin*, 978 F.3d 49, 53 (3d Cir. 2020) (quoting *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014)).

2

> The § 3553(a) factors cited in § 3583(e)(1) are as follows:
>
> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*Melvin*, 978 F.3d at 53 (quoting *United States v. Davies*, 746 F.App'x 86, 88-89 (3d Cir. 2018)). "[I]t is notable that the only traditional sentencing factor *not* relevant to a court's decision of whether to impose supervised release . . . is the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. . . . This omission reinforces the idea that the primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment." *Murray*, 692 F.3d at 280 (internal quotation marks, citations, and brackets omitted).

When weighing the relevant § 3553(a) factors and considering a defendant's motion for early termination of supervised release, "a district court need not find that an exceptional, extraordinary, new, or unforeseen circumstance warrants early termination of a term of supervised release before granting a motion under 18 U.S.C. § 3583(e)(1)." *Melvin*, 978 F.3d at 53. However, "'*generally*, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or

unforeseen circumstances' warrant it." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F.App'x at 89) (emphasis in *Melvin*).

Here, Defendant Reyes pleaded guilty to fraudulently preparing tax returns in violation of 18 U.S.C. § 286, which resulted in refunds of over three million dollars. As set forth in the Final Presentence Report ("PSR"), to which Defendant did not object, the Offense Conduct was as follows:

> Between 2011 and June 2015, Brian Reyes operated Reyes Services LLC, a check cashing business at 618 Cedar Avenue, Scranton, Pennsylvania.
>
> After receiving information from DEA agents about possible drug activity at the business, IRS agents conducted an investigation which indicated that from November 2011 to February 2015, Reyes Services cashed 564 United States Treasury income tax refund checks totaling $3,655,368.76. The refunds were obtained through the submission of fraudulent federal income tax returns filed using stolen identities of taxpayers. According to agents, there were approximately 589 identities used in the fraudulent scheme.
>
> On June 17, 2015, agents executed a search warrant at Reyes Services, and Brian Reyes was present. The defendant admitted his involvement in the check cashing scheme to agents during an interview. Amauris Almonte, who is being prosecuted in the Eastern District of Pennsylvania, provided Brian Reyes with various identification documents and agreed to pay Brian Reyes a ten percent fee for each fraudulently obtained United States Treasury income tax refund check he cashed. After approximately two years, the defendant's reimbursement reduced to 5 percent due to Amauris Almonte's decreased fraudulent checks. Brian Reyes also cashed checks for at least two others who were referred to the defendant by Amauris Almonte. The defendant further advised that he processed approximately $20,000 weekly in legitimate checks. He generally charged a 2.5 percent rate to cash a check. Agents subsequently seized $48,933.31 from his business checking account at NBT Bank, Scranton.
>
> Brian Reyes used his business to cash $3,655,368.76 in United States income tax refund checks that had been fraudulently obtained by others.

(Doc. 32, ¶¶ 4-7). Following his plea of guilty in the above-captioned case in October of 2016, but prior to sentencing, Defendant was also involved in the distribution of between 50-100 grams of heroin in Lackawanna County in April and May of 2017. (*See* Doc. 51, Second Addendum to the Presentence Report); (*see also*, Doc. 61 (Sentencing Letter to Court from Defendant's counsel, admitting that Defendant "involved himself in the business of distributing heroin while the current case was before this Court" and that Defendant "acknowledges that he made a terrible mistake in getting involved in any way with purveying heroin.")).

Defendant Reyes' term of supervised release began approximately 20 months ago and is currently scheduled to expire on January 12, 2025. Reyes' present motion asserts that since his release, he has been paying his monthly restitution payments consistently and has been employed full-time at McLaine Industries in Jessup, Pennsylvania, for 18 months. (Doc. 94, ¶¶ 6, 7). Defendant argues that he "has abided by all the terms and conditions and his supervision and has been a productive member of society" and that he has "demonstrated full rehabilitation." (Doc. 95, at 2) (*see also*, *id.* at 3 (stating that Defendant is a "family man, involved in the lives of his four children", is in a "stable marriage", and is a "fully productive member of society")).

Notably absent from Defendant's motion and accompanying brief is any basis for termination of his supervised release aside from a general assertion that he is living by commonly accepted norms of society, *i.e.* working full-time, not breaking the law, and

5

raising a family. Nor does Defendant present any evidence that "new or unforeseen circumstances" have arisen warranting the early termination of his supervised release[2] or that the supervised release is causing him any undue hardship. Even recognizing that Reyes has purportedly fully complied with the terms of his supervised release, Defendant has simply done what is required of him while on supervised release. Mere compliance with the terms of his supervised release does not entitle him to early termination of his three-year term of supervised release. *See e.g., United States v. Laine*, 404 F.App'x 571, 573-574 (3d Cir. 2010) ("Simple compliance with the conditions of supervised release are expected and not exceptional") *abrogated by United States v. Melvin*, 978 F.3d 49 (3d Cir. 2020); *United States v. Welling*, 2021 WL 409834, *4 (W.D. Pa. 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct, is *required* behavior while serving a term of supervised release.") (citing *United States v. Banks*, 2015 WL 926534, at *4 (W.D. Pa. 2015)) (emphasis in original).

The Court also considers that Defendant engaged in a lengthy, four-year scheme to defraud the United States with respect to tax claims from 2011 to 2015. Defendant further engaged in additional criminal behavior – the distribution of heroin – while awaiting

---

[2] This Court recognizes that the Third Circuit has "disavow[ed] any suggestion that new or unforeseen circumstances *must* be shown", *Melvin*, 978 F.3d at 53 (emphasis added), but it is nonetheless one of a number of factors that this Court should consider in determining the merits of Defendant's motion. *See e.g. id.* ("We think that [g]*enerally*, early termination of supervised release under § 3583(e)(1) will be proper only when the sentencing judge is satisfied that new or unforeseen circumstances warrant it. That is because, if a sentence was 'sufficient, but not greater than necessary' when first pronounced, 18 U.S.C. § 3553(a), we would expect that something will have changed in the interim that would justify an early end to a term of supervised release.") (some internal citations and quotation marks omitted) (emphasis in original).

sentencing in 2017.  The nature and circumstances of the fraud in which he engaged, including its prolonged duration and the large amount of money Defendant obtained as a result of his fraudulent scheme, weigh in favor of a finding that it is not in the interests of justice to terminate Defendant's supervision early.  This finding is further buttressed by Defendant's history and characteristics, namely Defendant's demonstration of dishonest behavior in defrauding the Government and his decision to engage in further criminal behavior involving the distribution of illegal narcotics while awaiting sentencing.  Continued supervised release in this case provides possible deterrence to further criminal conduct, and works to aid in the protection of members of the public.  Defendant's compliance with the terms of his supervised release and abstention from further criminal conduct since his release from prison may in fact demonstrate the desired deterrent effect of the supervised release on Defendant to refrain from engaging in further unlawful behavior.  *See e.g. United States v. Miles*, 2020 WL 4904019, *3 (W.D. Pa. 2020) ("Indeed, the fact of compliance may very well mean that supervision is serving its deterrent and rehabilitative purposes and continuation of it to full term will achieve its desired effects on the supervised individual and community.").  In addition, these facts all support a finding that Defendant, and the public, are best served by continuing Defendant's supervised release and further aiding him in his rehabilitation.

      Finally, Reyes' outstanding restitution balance of over three million dollars and the need for him to continue to regularly and timely provide his restitution payments to the IRS

weigh heavily in favor of continuing Defendant's supervised release and ensuring his compliance with the terms of the supervised release as well as encouraging his continued employment.

For these reasons, and upon consideration of all of the relevant statutory factors, the specific facts and circumstances of this case, and the arguments presented in the parties' filings, the Court finds that the purposes to be served by the imposition of supervised release by the Court have not yet been satisfied at this time. Consideration of the relevant § 3553 factors weigh in favor of requiring Defendant to serve the remaining term of his supervised release. Defendant's motion will therefore be denied.

## III. CONCLUSION

For the foregoing reasons, Defendant Reyes' Motion for Early Termination of Supervised Release (Doc. 94) will be denied. A separate order follows.

_____
Robert D. Mariani
United States District Judge